UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ILFRENISE CHARLEMAGNE,**

    Petitioner,

v.

**UNITED STATES OF AMERICA,**

    Respondent.
_____/

Case No. 8:19-cv-2742-T-35TGW

Crim. Case No. 8:15-cr-462-T-35TGW

## O R D E R

This cause is before the Court on Petitioner Ilfrenise Charlemagne's timely-filed *pro se* motion to vacate sentence under 28 U.S.C. § 2255 (Civ. Doc. 1) and supporting memorandum (Civ. Doc. 2). Having considered the motion and memorandum, the United States' amended response (Civ. Doc. 14), and Charlemagne's reply (Doc. 15), and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, the Court **ORDERS** that the motion is **DENIED**:

### PROCEDURAL HISTORY

Charlemagne was charged by superseding indictment with 20 counts of wire fraud, 20 counts of theft of government property, and one count of aggravated identity theft. (Cr. Doc. 29) Charlemagne pleaded guilty to one count of wire fraud. (Cr. Doc. 113) The other charges were dismissed. Charlemagne was sentenced to 33 months in prison, followed by 36 months of supervised release. (Cr. Docs. 159, 162) The Court imposed a total of $122,770.35 in restitution to Medicaid and the Social Security Administration. (Cr. Docs. 159, 162). Charlemagne filed a § 2255 motion to vacate in case number 8:17-cv-1902-T-

1

35TGW. The Court granted the motion to allow her to file a delayed notice of appeal. Accordingly, an amended judgment was entered imposing the same sentence and restitution amount. (Cr. Doc. 183) Charlemagne appealed, challenging her conviction and sentence as well as the amount of her restitution and forfeiture obligations. In *United States v. Charlemagne*, 774 F. App'x 632 (11th Cir. 2019), the Eleventh Circuit affirmed in part and dismissed the appeal in part.

## **STANDARDS OF REVIEW**

On collateral review the petitioner bears the burden of proof and persuasion on each and every aspect of her claim, *see In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016), which is "a significantly higher hurdle than would exist on direct appeal" under plain error review, *see United States v. Frady*, 456 U.S. 152, 164-66 (1982). Therefore, if the Court "cannot tell one way or the other" whether the claim is valid, then the petitioner has failed to carry her burden. *Moore*, 830 F.3d at 1273; *cf. United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 20050 (under plain error review, "the burden truly is on the defendant to show that the error actually did make a difference. . . . Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant.").

Charlemagne asserts ineffective assistance of counsel. To succeed on her claim, she must show that (1) her counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). However, a court "should recognize that counsel is

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) (stating that, in assessing counsel's performance, a court "ask[s] only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.").

To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In a case involving a plea, a petitioner establishes prejudice by showing a reasonable probability that, if not for counsel's deficient performance, she would not have entered the plea and would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## DISCUSSION

**Ground One: Ineffective Assistance Of Counsel**

### A.   Introduction

In her sole ground for relief, Charlemagne claims that counsel was ineffective in failing to properly advise her of the deportation consequences of her plea. She claims that counsel "failed to advise [her] that her plea of guilt[y] would preclude her from requesting a waiver of deportation since her loss would be calculated as an aggravated felony due to the loss amount over $10,000.00 under INA § [1]101(a)(43)." (Civ. Doc. 1 at 4) The Eleventh Circuit addressed this aspect of immigration law in *Martin v. United States*, explaining that "[t]he Immigration and Nationality Act provides that '[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable.' 8 U.S.C. § 1227(a)(2)(A)(iii)." 949 F.3d 662, 667(11th Cir. 2020). An aggravated felony "includes

'an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.' 8 U.S.C. § 1101(a)(43)(M)(i)." *Id.* Charlemagne contends that because of counsels' erroneous advice, she was "misinformed" and "under the misimpression" that the loss amount would be less than $10,000. (Civ. Doc. 2 at 11-12). She also argues that counsel failed to inform her that the loss amount would be determined after the entry of her plea. Charlemagne asserts that counsels' alleged failure to advise her properly caused her plea to be involuntary.

### B. Charlemagne's Plea

As addressed, Charlemagne agreed to plead guilty to one count of wire fraud. Deportation consequences of the plea, as well the fact that Charlemagne would incur financial obligations, were addressed prior to entry of the plea. The plea agreement advised Charlemagne that she could be "removed from the United States, denied citizenship, and denied admission to the United States in the future." (Cr. Doc. 113 at 13) The plea agreement also provided that Charlemagne would make full restitution "in an amount and to victims to be determined at the time of sentencing" and be subject to forfeiture, including a money judgment, in the amount of the proceeds obtained as a result of the wire fraud offense charged in Count One. (Cr. Doc. 113 at 3, 8-12) Charlemagne initialed every paragraph of the agreement and signed the agreement. (Cr. Doc. 113)

During the change of plea hearing, Charlemagne told the Court under oath that she was not a United States citizen and that she understood she was subject to removal or deportation proceedings as a result of the plea. (Cr. Doc. 195 at 4, 8-9, 32) Charlemagne expressed her understanding that if she was deported, she could not return to the United States without written permission, that she probably would not receive such

permission because of her criminal conduct, and that she would only be able to visit with her family if they came to see her. (Cr. Doc. 195 at 9) Charlemagne understood that the Court was authorized to impose restitution and agreed to "make full restitution" to any victims as determined by the Court. (Cr. Doc. 195 at 10-11, 13)

At the change of plea hearing, Charlemagne further acknowledged that the United States would likely seek a forfeiture money judgment in the "amount of the value of the proceeds obtained as a result of the offenses charged" in Count One. (Cr. Doc. 195 at 18) Charlemagne also understood that there was a significant discrepancy between the amount the United States would seek and the amount her attorneys believed may be warranted. She acknowledged that the United States would seek a minimum of $36,062.08, and that the maximum amount the United States would seek was in the range of $700,000 to $755,000. (Cr. Doc. 195 at 18-21). Charlemagne understood that, on the other hand, her attorneys might argue that the amount was approximately $1,000. (Cr. Doc. 195 at 20-21) Charlemagne stated that she understood the amount was to be determined by the Court after taking evidence and hearing argument and that she would be subject to the Court's determination. (Cr. Doc. 195 at 21). Charlemagne told the Court that no one made any promises to her that she relied on in entering the plea other than the promises contained in the plea agreement. (Cr. Doc. 195 at 29)

The Court accepted Charlemagne's plea as knowingly, intelligently, and voluntarily entered. (Cr. Doc. 195 at 42) At sentencing, after taking testimony from numerous witnesses, the Court imposed the lowest guideline sentence of 33 months in prison, followed by 36 months of supervised release. Charlemagne was ordered to pay a total of $122,770.35 in restitution. In affirming Charlemagne's conviction, the Eleventh Circuit

upheld the amount of restitution and forfeiture, and held that Charlemagne failed to demonstrate error in the Court's acceptance of her plea as knowing and voluntary. *Charlemagne*, 774 F. App'x 632.

### C. Analysis of Charlemagne's Claim

Charlemagne has not met her burden of showing that counsel was ineffective under *Strickland*. Charlemagne contends that counsel failed to advise her that she would be subject to mandatory deportation and that she would not be able to seek a waiver because the loss amount would be over $10,000. In fact, she contends that counsel advised her the loss amount would be less than $10,000 and that counsel failed to tell her that the amount would be determined after the plea. Charlemagne contends that counsels' advice rendered her plea involuntary. She notes in her reply that counsel did not file affidavits in this § 2255 proceeding in support of their contrary assertions of the facts. First, as to the facts, counsels' affidavits are not necessary in this proceeding. In resolving this matter, the Court relies on Charlemagne's sworn statements at the change of plea hearing. As explained, she acknowledged that the amount of the loss was controverted and would be decided after the plea was entered. Second, even if counsel could not provide a definitive amount for the loss for which she would be subject or clear answers to the resulting consequence to her immigration status, Charlemagne is entitled to no relief.

In *Martin*, 949 F.3d at 667, the Eleventh Circuit addressed a criminal defense attorney's obligations under Supreme Court precedent when advising a client about deportation consequences of a plea:

> In *Padilla* [*v. Kentucky*, 559 U.S. 356 (2010)], the Supreme Court held that the Sixth Amendment right to effective assistance of counsel requires

6

> counsel to "inform her client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473. Immigration law is complex, and "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369, 130 S.Ct. 1473. "But when the deportation consequence is truly clear," counsel has a "duty to give correct advice." *Id.*

Charlemagne has not demonstrated that counsel performed deficiently. The ineffective assistance claim in *Martin* was very similar to Charlemagne's claim. Martin asserted that counsel did not inform him that deportation was mandatory for an aggravated felony conviction and misadvised him that the loss amount would be calculated at less than $10,000. *Id.* at 666. The Eleventh Circuit concluded that Martin's counsel was not ineffective under *Padilla*, holding that since Martin did not conclusively plead to an aggravated felony, his attorney was only obligated to inform him of the possibility of negative deportation consequences. The Eleventh Circuit explained, *id.* at 668:

> In pleading to access device fraud and aggravated identity theft, Martin did not conclusively plead to an aggravated felony. In contrast to offenses like trafficking in a controlled substance, these convictions, on their face, do not make deportation "presumptively mandatory." *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1473; *see also* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law . . . relating to a controlled substance . . . is deportable."); *Hernandez v. United States*, 778 F.3d 1230, 1233 (11th Cir. 2015). This is not an instance in which "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" for Martin's conviction. *Padilla*, 559 U.S. at 368, 130 S.Ct. 1473.
>
> Because of the uncertainty, Martin's counsel was required to advise him only that his pending criminal charges may carry a risk of adverse immigration consequences. Determining what constitutes an aggravated felony can be a difficult task. *See id.* at 378, 130 S.Ct. 1473 (Alito, J., concurring) ("Defense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.'"). This is normally an inquiry reserved for immigration proceedings. In *Nijhawan v. Holder*, the Supreme Court held that immigration courts must apply a "circumstance-specific approach" to determine if a fraud offense involves loss to victims in excess of the $10,000

7

threshold under § 1101(a)(43)(M)(i). 557 U.S. 29, 38-40, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009). Such an approach requires immigration courts to "look to the facts and circumstances underlying an offender's conviction." *Id.* at 34, 129 S.Ct. 2294. The Supreme Court also indicated that the fraud loss must be "tied to the specific counts covered by the conviction," meaning that it could not be based on dismissed counts or on general conduct. *Id.* at 42, 129 S.Ct. 2294 (quotation marks omitted). Accordingly, access device fraud and aggravated identity theft *may* be predicate offenses for aggravated felonies—but they *may not*, depending on the amount of fraud loss and the underlying factual circumstances.

Similarly, Charlemagne did not conclusively plead guilty to an "aggravated felony." Under *Nijhawan*, whether a fraud offense is an aggravated felony for purposes of § 1101(a)(43)(M)(i) depends on the specific circumstances surrounding an offender's commission of a fraud or deceit crime on a particular occasion. Thus, an immigration court is required to apply a "circumstance-specific" approach to determine whether a fraud offense is "aggravated." 577 U.S. at 38-40. Whether Charlemagne's offense was "aggravated" had not been conclusively established when she entered the plea. As addressed *supra*, the record shows that the amount of any loss had not been determined at the time Charlemagne entered her plea and that there was a significant difference in the restitution amounts the Government and the defense believed were appropriate. Like the attorney in *Martin*, Charlemagne's counsel "could not have predicted the district court's fraud loss findings." *Martin*, 949 F.3d at 669. Additionally, Charlemagne might have had the opportunity to challenge the amount again at her deportation hearing, and counsel "could not have predicted how the immigration court would treat that question." *Id.* (citing *Nijhawan*, 557 U.S. at 42).

Thus, as Charlemagne did not conclusively plead guilty to an "aggravated" felony, counsel was only constitutionally obligated to inform Charlemagne of the possibility of adverse immigration consequences to perform as effective counsel under the Sixth

8

Amendment. *Martin*, 949 F.3d at 667 (citing *Padilla*, 559 U.S. at 369). Charlemagne does not allege that counsel failed advise her that her plea "may carry a risk of adverse immigration consequences," *see id.* In fact, the record establishes that at the time she pleaded guilty, Charlemagne knew that there was a possibility that she could be deported as a result of the plea.

In addition, the record of the change of plea hearing refutes Charlemagne's contentions that counsel misled her to believe that the loss amount would be less than $10,000, and failed to tell her that the loss amount would not be calculated until after she entered her plea. The record is clear that the loss amount had not been set at the time Charlemagne entered the plea, and Charlemagne signed a plea agreement providing that restitution would be determined at sentencing. (Cr. Doc. 113 at 3) Further, Charlemagne knew that the parties significantly disputed the amount. Specifically, she was aware that the minimum amount the United States would seek (approximately $36,000) was well above both the $10,000 threshold needed to qualify her offense as an aggravated felony and above the amount her counsel might request (approximately $1,000). (Cr. Doc. 195 at 18-21) In addition, Charlemagne conveyed to the Court her understanding that the amount would ultimately be determined by the Court following the presentation of evidence and argument and that she would be bound by the Court's determination. (Cr. Doc. 195 at 18-21)

Charlemagne's statements at the change of plea hearing, which were made under oath, carry a strong presumption of verity. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)

("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). Charlemagne has not overcome the presumption that her statements at the change of plea hearing were true.

Based on the foregoing, the Court concludes that Charlemagne has failed to demonstrate ineffective assistance of counsel that rendered her plea involuntary. An evidentiary hearing is not warranted. Charlemagne has the burden of establishing the need for an evidentiary hearing, *see Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984), and she would be entitled to a hearing only if her allegations, if proven, would establish a right to collateral relief, *see Townsend v. Sain*, 372 U.S. 293, 307 (1963). A district court deciding a § 2255 motion may "order … its summary dismissal '[i]f it plainly appears from the face of the motion and … exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (quotations omitted). Accordingly, no hearing is required when the record establishes that a section 2255 claim lacks merit, *see United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

For the reasons set forth herein, the motion to vacate under 28 U.S.C. § 2255 (Civ. Doc. 1) is **DENIED**. The **CLERK** is directed to enter a judgment against Charlemagne, to **CLOSE** this case, and to enter a copy of this Order in the criminal action.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Charlemagne is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of her petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a COA.

Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Charlemagne must show that reasonable jurists would find debatable (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because she fails to show that reasonable jurists would debate the merits of her claim, Charlemagne is not entitled to a COA. Therefore, she is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Charlemagne must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 3rd day of June, 2020.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE